126 N.J. Super. 10 (1973)
312 A.2d 654
SIDNEY GLASER, DIRECTOR, DIVISION OF TAXATION, PLAINTIFF-RESPONDENT,
v.
PATRICK DOWNES, JR., d/b/a ROUTE 3 ESSO, DEFENDANT-APPELLANT. SIDNEY GLASER, DIRECTOR, DIVISION OF TAXATION, PLAINTIFF-RESPONDENT,
v.
SHELL OIL COMPANY, INTERVENOR-APPELLANT. SHELL OIL COMPANY, PLAINTIFF-APPELLANT,
v.
SIDNEY GLASER, DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT. PATRICK DOWNES, JR., d/b/a ROUTE 3 ESSO, INTERVENOR-APPELLANT,
v.
SIDNEY GLASER, DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT. MOBIL OIL CORPORATION, PLAINTIFF-APPELLANT,
v.
SIDNEY GLASER, DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT. EXXON CORPORATION, PLAINTIFF-APPELLANT,
v.
SIDNEY GLASER, DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1973.
Decided November 27, 1973.
*11 Before Judges GOLDMANN, MATTHEWS and LORA.
*12 Mr. Howard Stern argued the cause for appellant Patrick Downes, Jr. (Messrs. Shavick, Stern, Schotz, Steiger and Croland, attorneys).
Mr. Michael D. Loprete argued the cause for appellant Shell Oil Company (Messrs. Mattson, Madden, Polito and Loprete, attorneys; Mr. Loprete on the brief; Mr. Andrew S. Polito of counsel).
Mr. Augustus Nasmith argued the cause for appellant Mobil Oil Corporation (Messrs. Carpenter, Bennett and Morrissey, attorneys; Ms. Heather Mullett and Mr. Michael S. Waters on the brief).
Mr. William L. Dill, Jr. argued the cause for appellant Exxon Corporation (Messrs. Stryker, Tams and Dill, attorneys; Mr. Richard R. Spencer, Jr. on the brief).
Mr. Donald B. Kipp argued the cause for intervenor The Sperry and Hutchinson Company (Messrs. Pitney, Hardin and Kipp, attorneys).
Mr. Harry Z. Haushalter, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, and Ms. Virginia L. Annich, Deputy Assistant Attorney General, of counsel).
GOLDMANN, J.A.D.
Patrick Downes, Jr., d/b/a Route 3 Esso. appeals from a Chancery Division order permanently enjoining him from issuing trading stamps in conjunction with the sale of motor fuel in amounts exceeding one trading stamp for each $.10 of motor fuel purchased. Shell Oil Company, Mobil Oil Corporation and Exxon Corporation seek review of the action taken by Sidney Glaser, Director of the Division of Taxation, Department of the Treasury, on October 2, 1972, giving notice and determining, among other *13 things, that giveaways, whether or not conditioned on the purchase of motor fuel, are deemed illegal and violative of the provisions of N.J.S.A. 56:6-2(e). Shell has intervened in the Downes appeal, and Downes in the Shell appeal. The Sperry & Hutchinson Co., whose S & H stamps Downes issued in connection with his service station business, has also intervened in the appeals.
The appeals have been consolidated and the permanent injunction order stayed pending our determination.
Director Glaser brought an action against Downes seeking a permanent injunction prohibiting his distribution of more than one S & H or Plaid trading stamp for each $.10 of motor fuel purchased at his Esso Service Station. It is conceded that Downes had been issuing three trading stamps for each $.10 of motor fuel purchased. Following a three-day trial, the Chancery Division judge, in an opinion published in 120 N.J. Super. 476 (1972), held that Downes' practice violated N.J.S.A. 56:6-2(e) in that it constituted an illegal rebate, allowance, concession or benefit, thereby unlawfully permitting motor fuel to be purchased from a retailer below the posted price or at a net price lower than the posted price applicable at the time of sale. He held that the issuance of three trading stamps for each $.10 of motor fuel purchased violated the cash discount standard allowed in Sperry & Hutchinson Co. v. Margetts, 25 N.J. Super. 568 (Ch. Div. 1953), aff'd 15 N.J. 203 (1954). Although the only issue before him for determination was the legality of Downes' trading stamp practice, the trial judge went on to address himself to other trade devices which the evidence indicated were in use in defendant's competitive area and elsewhere, and which he held fell plainly within the prohibition of N.J.S.A. 56:6-2(e). These were: (1) giveaways, whether or not connected with the purchase of motor fuel; (2) the issuance of bonus stamps in connection with the practice of punch cards, and (3) the giving of postage stamps with each purchase of motor fuel. The judge stated that *14 "the Director must give gasoline retailers throughout the State ample written notice of the illegality of each of these competitive devices," including excessive trading stamps. He went on to say:
* * * I leave to his discretion whether he takes this action by the adoption of appropriate regulations or the giving in some fashion of adequate written notice to all of the gasoline retailers operating in this State of the conclusions reached in this opinion.
The order permanently enjoining Downes, dated September 20, 1972, directed that the injunction was to become effective 15 days after the Director informed each retail motor fuels dealer in New Jersey, by written notice through regular mail, that the issuance of the following items was illegal under N.J.S.A. 56:6-2(e): (1) trading stamps in amounts exceeding one stamp for each $.10 of motor fuel purchased; (2) bonus stamps in connection with the practice of card punching or any substantially similar practice involving the sale of motor fuel; (3) postage stamps, and (4) giveaways, whether or not conditioned on the purchase of motor fuel. This order is the basis for Downes' appeal.
On October 2, 1972 Director Glaser sent written notice to all licensed retail motor fuels dealers in New Jersey that pursuant to the Chancery Division injunctive order of September 20, 1972, the issuance by retail motor fuels dealers of any of the four items mentioned in the order was deemed to be illegal and violative of N.J.S.A. 56:6-2(e). The dealers were advised that effective 15 days from the date of the notice, the issuance of any of the four items might subject the dealer to the penalties enumerated in N.J.S.A. 56:6-3, including the suspension of his license for not less than 5 nor more than 30 days, and a fine for each violation of not less than $50 nor more than $200. It is this action by the Director that forms the basis for the Shell, Mobil and Exxon appeals.

*15 I.
Downes' sole argument is that a retail motor fuels dealer is constitutionally free to give trading stamps with fuel purchases so long as the stamps are offered uniformly and the cost of such offerings does not reduce the sales price of the fuel below the dealer's cost. Translated over into the factual frame of reference of this case, his claim is that he was not in violation of N.J.S.A. 56:6-2(e) in giving his customers three trading stamps for each $.10 of motor fuel purchased  the same contention projected at the trial. Although the trial judge said that it might very well be, as the State contended, that the theory of Margetts should be reconsidered and the giving of even one trading stamp for each $.10 of motor fuel purchased be deemed illegal under the statutory provision, he properly held that he was bound by the Supreme Court decision in that case. He observed, moreover, that the constitutionality of N.J.S.A. 56:6-2(e) was later upheld in Fried v. Kervick, 34 N.J. 68 (1961), and that the court, in effect, reaffirmed its decision in Margetts. Additionally, the judge pointed out, the Legislature apparently acquiesced in the Margetts holding that trading stamps should not be considered an unlawful rebate under a later statute involving the regulation of pharmacists. See Supermarkets General Corp. v. Sills, 93 N.J. Super. 326 (Ch. Div. 1966), involving L. 1965, c. 120 (N.J.S.A. 45:14-12(f))
In the State's brief filed on behalf of the Director of the Division of Taxation, it is urged that the Margetts holding should be overruled and the issuance of single stamps declared illegal. That issue was not before the trial court; indeed, the pleadings clearly evidence the acceptance of the continued viability of the Margetts holding. The third count of the complaint, and the only count remaining at the time of the pretrial order, sought judgment enjoining Downes from "engaging in the issuance of such an excessive quantity of trading stamps * * *." The pretrial order specified the question to be determined at trial as, "Is the issuance of triple trading *16 stamps in violation of N.J.S.A. 56:6-2(e)"? Hitherto no one had questioned the implicit recognition of the validity of the practice of issuing one stamp for each $.10 purchase. The State now raises the validity issue for the first time in these appeal proceedings. It seizes upon the trial judge's passing remark that the Margetts theory might well be reconsidered. Of course, appeals are taken from judgments and not from opinions, let alone dicta. Hughes v. Eisner, 8 N.J. 228 (1951). The judge went on to say that any reevaluation of Margetts could not be made by a trial court, for it is bound by the Supreme Court decision in that case. The order for a permanent injunction contains no reference to the issue litigated in Margetts; it refers exclusively to the issuance of more than one trading stamp.
Margetts is the clear answer to the contention now suddenly advanced by the State. Its holding is still binding upon the Director and this court. Accordingly, the injunctive order under appeal is affirmed.

II.
As we have just pointed out, the single issue before the trial judge was whether the practice of issuing triple stamps with each $.10 purchase of motor fuel violated N.J.S.A. 56:6-2(e)  that and nothing more. He was led into a consideration of such practices in Downes' competitive area as giveaways, the issuance of bonus stamps in connection with punch cards and the giving of postage stamps with motor fuel purchases, when the State's attorney indicated that the Director of the Division of Taxation was considering a change in the then existing regulation, in effect since May 1961, and which provides that:
(a) No motor fuel retail dealer shall give away anything of value when such "giveaway" is conditioned upon the purchase of motor fuel and would have the tendency to produce sharp and drastic price reductions, create price wars or foster price instability throughout the industry.
*17 (b) Any such "give-away" in connection with so-called anniversaries, grand openings, or similar occasions is prohibited. [N.J. Administrative Code 18:19-2.8]
The discussion of these matters was entirely extraneous to the sole matter for determination. It appears at the very close of the opinion, 120 N.J. Super. at 491-492.
Whatever was said about giveaways is surely not binding upon appellants Shell, Mobil and Exxon. They were not parties to the Downes litigation. Their interests were not represented by either of the parties thereto, and they were unaware of the pendency of the action or of the permanent injunction order eventually entered.
This brings us to the notice which the Director mailed to all licensed retail motor fuels dealers on October 2, 1972. It is uncontroverted that (1) the Director gave no notice of his intended issuance or mailing of that notification; (2) no opportunity was given to interested persons, prior to the sending out of the notice, to submit data, views or arguments, orally or in writing; (3) no hearing was held with regard to the notice; (4) the Director gave no consideration to any data, views or arguments of interested persons respecting the notice prior to issuance, and (5) he never filed the notice with the Secretary of State.
All parties to these consolidated appeals have stipulated that in accordance with N.J.A.C. 18:19-2.8(a), quoted above, the policy of the Division of Taxation prior to the October 2, 1972 notice, has been to institute enforcement proceedings against only those retail dealers issuing giveaways conditioned on the purchase of motor fuels; that before that date it was not the policy of the Division to institute such proceedings against dealers issuing giveaways that were not conditioned on the purchase of motor fuels (with the exception of proceedings prosecuted under N.J.A.C. 18:19-2.3(d) involving lotteries, prizes and games of chance), and that in accordance with the latter policy, no enforcement proceedings *18 were, in fact, ever instituted with respect to giveaways not conditioned on the purchase of motor fuels.
In reliance upon the policy followed by the Division, Shell, Mobil and Exxon have, through their retail dealers, for some years used free gifts (giveaways) as a means of publicizing their brands and encouraging the public to patronize their dealers. At the time the Director's notice was received by dealers, all three companies were in the process of carrying out free promotions. Shell offered glasses (it had offered glassware, salad bowls, steak knives and miniature automobiles in the six years preceding). Mobil was in the midst of a free promotion of four-ounce jars of jam or jelly (previous offerings were glasses, seasoning, plastic trash bags, thermoware, and tankards). Exxon's promotion was thermoware plastic mugs. The companies had invested unusually large sums in planning, promoting and carrying out their giveaway programs when they were suddenly confronted with the Director's order.
In no case was the giveaway conditioned upon the purchase of gasoline or any other product available at the retail service stations of the respective companies. Company publicity and station signs stated that no purchase was required. All that anyone requesting the free article had to show was a driver's license.
The order was in effect a rule or regulation. N.J.S.A. 52:14B-2(e) defines an administrative rule as an "agency statement of general applicability and continuing effect that implements or interprets law or policy * * *. The term includes the amendment or repeal or any rule * * *." The October 2 notice was precisely such an "agency statement," and since it offered an interpretation of N.J.S.A. 56:6-2(e) different from that embodied in the existing regulation, N.J.A.C. 18:19-2(a), it also constituted a repeal or amendment of that rule. It was a directive of universal application, for it was mailed to all licensed motor fuels dealers in New Jersey.
*19 What the Director did violated every requirement of N.J.S.A. 52:14B-4(a), which deals with notice and hearing prior to the adoption, amendment or repeal of any rule. That section requires at least 20 days' notice of the intended action; an opportunity afforded all interested persons to submit data, views or arguments, orally or in writing, and agency consideration of all such submissions. And N.J.S.A. 52:14B-5(a) directs that the agency file with the Secretary of State a certified copy of each rule it adopts.
N.J.S.A. 52:14B-4(d) expressly provides that no rule is valid unless adopted in substantial compliance with the notice and hearing requirements. There was not so much as a shadow of compliance by the Director with the clearly stated requirements of the Administrative Procedure Act. What he did denied due prcess of law to the three companies here involved.
It is argued in support of the Director's action that the notice represented nothing more than conformance with the Chancery Division's interpretation of the law. As already stated, the trial court was without jurisdiction to pass on the giveaway issue. Moreover, the court could not suggest to or order the Director to act in violation of the Administrative Procedure Act. That the Director knew precisely how he must proceed is indicated by his attempt to amend N.J.A.C. 18:19-14 in 1970. He gave notice at that time in the New Jersey Register of his intention to amend the regulation to control giveaways. 2 N.J.R. 51 (June 4, 1970). The regulation was never adopted because of opposition to the proposal.
We conclude that the action taken by the Director on October 2 was invalid.
The injunctive order in Glaser v. Downes is affirmed; the October 2, 1972 order of the Director is set aside as without force and effect.